UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05- 10523 NG

128 IMPORTS, INC., d/b/a 128 MAZDA-
OLDS-ISUZU, a Massachusetts corporation,

        Plaintiff,

vs.

GENERAL MOTORS CORPORATION,
a Delaware corporation,

        Defendant.

_____/

MAGISTRATE JUDGE_____
CIVIL ACTION
CASE NO.

RECEIPT # 62885
AMOUNT $ 250
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, 128 Imports, Inc., d/b/a 128 Mazda-Olds-Isuzu, sues General Motors Corporation ("GM") and states:

1. Plaintiff is a Massachusetts corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Wakefield, Massachusetts. Plaintiff is a "motor vehicle dealer" as defined in Massachusetts General Laws ("MGL") ch. 93B, § 1 and is a party to an existing franchise agreement as defined in MGL ch. 93B, §1 with the Oldsmobile Division of General Motors Corporation.

2. Defendant General Motors Corporation ("GM"), is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business in Detroit, Michigan. GM is a manufacturer of new motor vehicles including the Chevrolet, Oldsmobile, Cadillac, Pontiac, Buick and GMC Truck line-make, and it distributes such vehicles to dealers such as Plaintiff. GM is a "manufacturer" as defined by MGL ch. 93B, § 1.

3. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332 by diversity of citizenship. The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

4. Plaintiff has been an Oldsmobile dealer since 1970 and has maintained an Oldsmobile

franchise agreement with GM at all times material hereto. The Plaintiff has invested substantial time, effort, and monies in renovation of its Oldsmobile facility and the promotion of Oldsmobile and General Motors products.

5. Over the ensuing years, Plaintiff substantially increased sales of the Oldsmobile Brand in and around its market area and has enhanced the goodwill associated with all GM Brands.

6. By letter dated December 12, 2000, a copy of which is attached hereto as **Exhibit A**, GM notified Plaintiff of its intent to terminate or non-renew Plaintiff's Oldsmobile franchise, as well as all other Oldsmobile franchises in the United States. This announcement was subject to amendment of intention and GM steadfastly maintained that it had not acted to non-renew or otherwise terminate any Oldsmobile dealer by virtue of the preliminary announcement, which by definition was subject to change. Upon information and belief, subsequent to the December 12th announcement, GM has acted to eliminate the substantial majority of once existing Oldsmobile dealers by various means and measures. GM produced the last Oldsmobile in April 2004, depriving Oldsmobile dealers who remain, including Plaintiff, of an adequate and sufficient supply of vehicles. GM has destroyed the entire value and transferability of Plaintiff's Oldsmobile franchise.

7. By letter dated October 27, 2004, GM finally notified Plaintiff that its Oldsmobile Dealer Sales and Service Agreement, which is set to expire on October 31, 2005, will not be renewed.

8. As a result of GM's conduct Plaintiff has, in fact, lost the complete value of its Oldsmobile franchise and presently has virtually no marketable product to sell. Within a short time, Plaintiff will have no Oldsmobile product to sell at all. GM, at all times prior to its December 12, 2000, announcement, represented that the longevity of the Oldsmobile line-make was assured as evidenced by GM's inclusion of a renewal provision in the franchise agreement offered to Plaintiff

during October of 2000. Furthermore, GM represented that it planned an expansion of the models to be offered under the Oldsmobile moniker and made representations that GM did not contemplate, intend, or plan the discontinuation, phase out, or termination of the Oldsmobile line or the termination of Oldsmobile franchises notwithstanding that rumors of such a discontinuation abounded in the automotive retail sales community. With specific reliance upon these representations made by GM, Plaintiff made and continued to make substantial investments in land or land leases, improvements, employees, training, tools, machinery, inventory, advertising, equipment, parts, and goodwill based upon GM's continuing expressed commitment to provide Oldsmobile products for sale.

9. Upon information and belief, GM determined well before the December 12, 2000 announcement to terminate the Oldsmobile brand for reasons related to GM inter-brand competition, consolidation of the GM dealer network, the implementation of GM's "channeling strategy" and other reasons unrelated to profitability. GM studied, examined, and analyzed the termination of Oldsmobile and employed internal measures to terminate the Oldsmobile brand. These steps included: scaling back funding for and investment in the Oldsmobile Division; planning for the scaling back of Oldsmobile production; amendment of certain Oldsmobile dealer ancillary agreements such as Exclusivity Agreements to provide for the elimination of Oldsmobile without violating the express terms of such agreements; planning the transfer of Oldsmobile product to other GM divisions; reducing the Oldsmobile Division staff by planned transfer or termination; terminating or failing to renew or purchase some select Oldsmobile franchises; creating studies to examine the various effects upon GM of eliminating Oldsmobile relating to the cost of elimination; planning the reconstitution of the GM dealer network without Oldsmobile dealers; and combining GM brands in light of the planned Oldsmobile termination. GM failed to advise Plaintiff of these

plans or decisions and, in fact, concealed these activities from Plaintiff.

10. Plaintiff is presently under a renewed contract ("Sales and Service Agreement") with GM as a dealer of GM products. The Sales and Service Agreement was entered into as of November 1, 2000, and expires on October 31, 2005. The Sales and Service Agreement incorporates pre-printed, uniform, and completely non-negotiable "Standard Provisions" which are included within every GM dealer contract. The pre-printed, non-negotiable, uniform Standard Provisions contain a variety of provisions addressing topics from choice of law to the assignment of rights. The Sales and Service Agreement guarantees Plaintiff, among other things, the right to sell GM's Oldsmobile Division line of automobiles. The Sales and Service Agreement is construed under Michigan law pursuant to the choice of law provision in the contract. The Sales and Service Agreement is described by GM as a personal services contract and under Michigan law is not subject to the Uniform Commercial Code. The Sales and Service Agreement is not subject to Michigan's economic loss doctrine. The contract provisions were authored by GM in all respects and any doubts regarding the meaning of any provision therein must be construed against GM and in favor of Plaintiff. A true and correct copy of the Sales and Service Agreement, identified as **Exhibit B**, is attached hereto and made a part hereof by reference.

11. The fundamental purpose of Plaintiff's GM Sales and Service Agreement is to authorize Plaintiff, "to sell and service General Motor Products and represent itself as a GM Dealer." (**Exhibit B**, Standard Provisions—"Purpose of Agreement").

12. The Sales and Service Agreement provides specific circumstances by which the parties may terminate the Agreement. None of the termination provisions are applicable to this action and none include the discontinuation of a line-make, such as Oldsmobile, as grounds for termination of a Sales and Service Agreement by GM. (**Exhibit B**, Article 14; referred to as

4

"Standard Provisions.") Furthermore, pursuant to Massachusetts law, franchise agreements are perpetual unless terminated in accordance with the law. *See* MGL ch. 93B, § 5.

13. The Sales and Service Agreement between Plaintiff, as franchised dealer, and GM, as manufacturer, had an initial term of five (5) years. However, the Agreement further provided that GM "assures Plaintiff an opportunity to enter into a new agreement at the expiration date if GM determines that dealer has fulfilled its obligations under this agreement(s)." This provision, coupled with the fact that a franchise agreement is considered perpetual unless terminated pursuant to law, induced Plaintiff to reasonably rely upon GM's representation that there were no plans on the part of GM to discontinue the Oldsmobile line-make and that Plaintiff's substantial investments in furtherance of the sale of Oldsmobiles would be justified and would result in a reasonable return.

14. The Sales and Service Agreement provides that GM is obligated to "permit each dealer [including Plaintiff] the opportunity to achieve a reasonable return on investment if it fulfills its obligations under its Sales and Service Agreement." **(Exhibit B**, Article 4.1). GM has consolidated its dealer network and eliminated inter-brand competition at the expense of all Oldsmobile dealers and Plaintiff in particular. Plaintiff's array of marketable models has been substantially reduced to the point where the Oldsmobile line of vehicles are virtually unmarketable, particularly in comparison to other GM line-makes with which the Plaintiff is similarly situated. Plaintiff's available array of models have been so substantially reduced that Plaintiff has no chance of fulfilling its responsibilities within its designated Area of Primary Responsibility, and GM has voluntarily and deliberately decimated Plaintiff's Oldsmobile franchise. Moreover, by choosing Oldsmobile franchises for elimination to the exclusion of other GM Brands, GM has consciously and deliberately instituted a discriminatory system of motor vehicle distribution and has terminated in fact the Plaintiff's Oldsmobile franchise.

15. GM has engaged in a course of conduct, justifiably relied upon by Plaintiff, which engendered the reasonable belief that GM would provide automobile products to Plaintiff for sale to the public in accordance with GM's continuing commitment to contract renewals. Instead, through its conduct and statements to Plaintiff and other similarly situated Oldsmobile dealers, emphatically renounced these franchises and has announced that it has no intention of honoring its obligations, including the right of renewal, under the Sales and Service Agreement.

16. Based upon Plaintiff's good faith reliance and belief in GM's commitment to continue to provide automobile products in accordance with its contractual commitments and, based upon GM's urging in conjunction with GM's written assurances of contract renewals for its Oldsmobile franchise, Plaintiff took the business measures described herein. Further Plaintiff's actions and investments were coerced by GM's insistence that such actions be taken in order to receive certain stipends, authorizations, incentives, benefits and the like from GM.

17. By publication to GM Oldsmobile Dealers dated December 14, 2000, GM announced the existence of a "Transition Financial Assistance Program" for Oldsmobile dealers ("TFAP"). TFAP employs a GM compensation formula which unfairly values the loss to GM Dealers assigned to sell the Oldsmobile Brand as a result of GM's decision to discontinue Oldsmobile. Under TFAP, GM extends a value to the franchise which is but a fraction of the market value of a viable GM franchise on the open market. Once an Oldsmobile dealer elects to accept the TFAP Program offer from GM, the subject Oldsmobile franchise is promptly terminated by agreement between the GM and the affected Oldsmobile franchisee.

18. GM misled all Oldsmobile dealers, including Plaintiff, by representing that TFAP was superior in compensation to GM's "contractual obligations" and "state law." GM's statement was false and made in bad faith to induce Oldsmobile dealers, including Plaintiff, to accept the TFAP

payment and thereby waive all rights to seek other remedies which provide compensation for the true value of an Oldsmobile franchise. If the TFAP offer is not promptly accepted by an Oldsmobile franchisee then it is withdrawn by GM and the subject dealer takes nothing for the loss of the Oldsmobile franchise.

19. Sometime after instituting the TFAP Program, GM added a component to the program which allegedly compensated the Oldsmobile dealers for "special circumstances." GM has refused to honor Plaintiff's request for assistance under the program's "special circumstances," but has honored similar assistance requests from other affected Oldsmobile dealers. If Plaintiff does not now bring suit for the termination and deliberate decimation of its Oldsmobile franchise, Plaintiff will not be compensated by GM for this substantial loss of a family operated business which has existed for over 35 years.

20. Only one month prior to the announced termination of the Oldsmobile line-make, GM notified all GM Dealers assigned to sell the Oldsmobile Brand that they would be required to execute a revised GM Dealer Agreement. Plaintiff was among the GM Dealers to whom such notification was given. GM made no mention at that time of its plans to eliminate the Oldsmobile Brand. Plaintiff executed the revised GM Dealer Agreement knowing nothing of GM's plans.

21. GM controls all research and development, design, manufacturing, price, incentives, and marketing of its line-make of new motor vehicles. GM decides which models, model types, model variations, and the like which are allocated for sale to Oldsmobile dealers.

22. GM determines the product line and the manner in which such new motor vehicle product line will be distributed among its network of dealers. GM also determines which line-make of motor vehicles will be discontinued and terminated as part of a GM modification of its dealer network.

23. GM exercises unique and unilateral power over its line-make of motor vehicles. GM determines the allocation of intellectual and financial resources to any given line-make which results in the design, dependability, value, price, models offered, ultimate appeal, and marketability of such line-make.

24. GM has not abandoned or withdrawn from the market for automobile sales which the Oldsmobile Brand was designed to accommodate. Instead, GM has eliminated existing Oldsmobile models and has transferred Oldsmobile designs, chassis, drive trains, and research and development funding which should have been allocated to Oldsmobile to other GM Brands that GM has decided to enhance and continue. GM's conduct with respect to Oldsmobile amounts to open discrimination against Plaintiff and all Oldsmobile dealers similarly situated. GM has singled out the Oldsmobile Brand and Oldsmobile dealers for elimination even though such Oldsmobile dealers share equal contractual rights with other GM dealers. The dismantling of the Oldsmobile Brand has resulted in the present elimination of many Oldsmobile franchises across the United States which existed only months ago.

25. GM's December 12, 2000, announcement, **Exhibit A**, and its October 27, 2004 letter, constitute a breach of Plaintiff's Sales and Service Agreement and a notice of intent to terminate, discontinue, or not renew Plaintiff's Sales and Service Agreement. GM's course of conduct further constitutes the intentional termination in fact or de facto termination of Plaintiff's Oldsmobile franchise.

26. GM's December 12, 2000, announcement and the October 27, 2004 letter and their effect on Plaintiff's Sales and Service Agreement are governed by the terms and provisions of Massachusetts law. More importantly, the discretion to act arbitrarily that GM claims by contract has been eliminated by the requirements of Massachusetts law. The GM Sales and Service

Agreement is modified by operation of law when a particular right to act in favor of GM is governed and limited by the application of Massachusetts law. GM's Sales and Service Agreement acknowledges the modification and literal amendment of its Sales and Service Agreement by operation of state law in Article 17.12 of its Standard Provisions which provides in part that "[I]f performance under this Agreement is illegal under a valid law ... performance will be modified to the minimum extent necessary to comply with such law...." (*See* Ex. C, Art. 17.12 at 29).

27. GM's termination of Plaintiff's Oldsmobile franchise is not permitted by Massachusetts law or GM's own Sales and Service Agreement. Further, GM's actions are not undertaken in good faith and are not undertaken for good cause. GM's notice of intent to terminate and discontinue and its *de facto* termination of Plaintiff's franchise is not based on a material and substantial breach of the Sales and Service Agreement by Plaintiff, as required by MGL ch. 93B, § 5(h) and contract.

28. GM has imposed and enforced contractual conditions agreed to by Plaintiff before GM's December 12, 2000, announcement, such as net working capital requirements and the like, which GM knows to be unreasonable in light of GM's decision to terminate its Oldsmobile brand. Moreover, GM has imposed an Area of Primary Responsibility (essentially a dealer's assigned sales and service area) upon Plaintiff which Plaintiff cannot possibly satisfy because of GM's systematic elimination of a viable product line for the Oldsmobile Brand.

29. Plaintiff does not now seek to enjoin the termination of its franchise as the destruction of Oldsmobile has been in progress for some time and is now effectively complete as evidenced by paltry Oldsmobile sales nationwide. The last Oldsmobile-branded vehicle was produced in April 2004 and no further production is planned for the Oldsmobile line-make. Plaintiff seeks damages in compensation for the losses GM has created in the wake of this deliberate demolition of the

Oldsmobile brand.

## COUNT I

### Violations of Massachusetts General Laws Chapter 93B

30.  Plaintiff realleges paragraphs 1 through 29 as if fully set forth herein.

31.  This is an action for damages based upon violation of Massachusetts General Laws chapter 93B § 3, engaging in unfair methods of competition and unfair or deceptive acts or practices by terminating, cancelling, and not renewing Plaintiff's franchise without good cause, in bad faith or in an arbitrary or unconscionable manner in violation of chapter 93B § 5(a) for the reasons and actions described above.

32.  On October 27, 2004, GM provided written notice of its intent to terminate, discontinue, and not renew the Plaintiff's Oldsmobile franchise based upon the Defendant's determination to discontinue the Oldsmobile line-make. The Notice of Termination is in violation of MGL ch. 93B, § 5 as well as other applicable provisions of MGL ch. 93B, including, but not limited to the following:

(a)  GM has violated MGL ch. 93B, §5 in that GM has, by statements, conduct, and actions noticed its intent to discontinue, cancel, and not renew Plaintiff's Sales and Service Agreement and has caused the termination of Plaintiff's Oldsmobile franchise without good cause as required and defined by Massachusetts law;

(b)  GM has violated MGL ch. 93B, § 4(c)(1) in that GM has manipulated the system of motor vehicle allocation or distribution or has implemented a system of allocation or distribution of motor vehicles to one or more of its franchise motor vehicle dealers (Plaintiff and Oldsmobile dealers similarly situated) which is arbitrary, unfair, and unreasonable. GM has violated this section by its elimination of Oldsmobile models, by its transfer of Oldsmobile models to other GM Brands,

by cessation of the research and development of Oldsmobile models, all in open discrimination against Oldsmobile dealers and Plaintiff. This action has been undertaken by GM simultaneous with its increased allocation of enhanced and varied models, model options and makes to GM's non-Oldsmobile dealers;

(c) GM has violated MGL ch. 93B, §4(c)(4) by attempting to require Plaintiff to accept GM's TFAP offer under threats that this was the best offer available and that benefits would be withdrawn from the offer unless Plaintiff promptly accepted and executed the TFAP documents which provide for mutual releases and the termination of the Oldsmobile franchise;

(d) GM has violated MGL ch. 93B, § 4(c)(11) by attempting to coerce Plaintiff into accepting GM's grossly undervalued TFAP offer and terminating its franchise by agreement under threat of losing the misrepresented and bad faith TFAP offer, thereby attempting to relieve GM of liability imposed by chapter 93B; and

(e) GM has violated MGL ch. 93(B), § 5(a)(4) by modifying "in fact" Plaintiff's Oldsmobile franchise, by eliminating Plaintiff's right to renew the franchise, to receive a reasonable return on investment, by failing to provide a sufficient number of models by series to allow Plaintiff to meet its obligations under its Area of Primary Responsibility all of which act to the detriment of the Plaintiff and affect its return on investment.

33. At all times material hereto, Plaintiff has complied with all terms and conditions of the Sales and Service Agreement and is not in violation of any contractual provision which would permit GM to involuntarily terminate the Oldsmobile franchise under the termination provisions of the Sales and Service Agreement or under the franchise laws of the State of Massachusetts. Additionally, there is no administrative remedy available to Plaintiff which offers any relief to a franchised dealer whose franchise has been marked for termination and is actively being terminated

by a manufacturer.

34. As a direct and proximate result of the wrongful acts of GM, the Plaintiff has suffered substantial damages. Pursuant to MGL ch. 93B, § 15, the Plaintiff is entitled to bring this action for damages.

WHEREFORE, Plaintiff demands judgment against the Defendant GM for damages together with prejudgment interest, attorney's fees, court costs and for any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of all issues triable as of right by jury.

## COUNT II

### Breach of Contract

35. Plaintiff realleges paragraphs 1 through 29 as if fully set forth herein.

36. This is an action for damages based upon breach of contract.

37. Since 1970, the Plaintiff has been authorized to sell and service Oldsmobile line-make motor vehicles. Since that time, the Sales and Service Agreement with GM has been continually renewed, in compliance with the terms of the agreement and Massachusetts General Laws chapter 93B, § 5. The most recent renewal of the contract was November 1, 2000, only a month prior to Defendant's Phase-out announcement. A copy of the Sales and Service Agreement is attached hereto and incorporated by reference herein as Plaintiff's **Exhibit B**. Pursuant to the terms and conditions of the written Sales and Service Agreement GM was obligated to continue to comply with all provisions of the contract, including: (1) to continue to comply with all provisions of the contract, including the obligation to provide a reasonable quantity and variety of products to permit Plaintiff to fulfill its obligations under its Area of Primary Responsibility through the five (5) year term of the Agreement; (2) to permit each dealer the opportunity to achieve a reasonable return on

investment if it fulfilled its obligations under the Agreement as set forth in Article 4.1; (3) to provide a supply of motor vehicles by series in reasonable quantities; and (4) because the Sales and Service Agreement is considered as perpetual in nature under Massachusetts law, GM was required to maintain the Sales and Service Agreement in full force and effect indefinitely unless terminated pursuant to the termination provisions of the Sales and Service Agreement or as allowable under Massachusetts law. Plaintiff has at all times material hereto complied in all respects with the terms and conditions of the Sales and Service Agreement and has fulfilled its obligations under such Agreement and otherwise has satisfied all conditions precedent to the bringing of this action.

38. GM's October 2004 announcement constitutes a complete repudiation of GM's obligations under the renewal provisions of the Sales and Service Agreement and such repudiation not only constitutes a modification of said agreement, but also releases the Plaintiff from satisfying any condition related to such renewal. GM has systematically reduced and is now actively eliminating Oldsmobile's motor vehicle series, models, and makes and Oldsmobile dealers within the GM dealer network. GM has also reconfigured its entire GM dealer network so as to accommodate the elimination of Oldsmobile dealers which has resulted in a new GM dealer network designed to eliminate the ability of Plaintiff to compete and to eliminate the Plaintiff's ability and contractual right to realize the opportunity to achieve a reasonable return on its investment. Finally, GM has caused, by its elimination and dismantling of its Oldsmobile brand in the various manners and means described herein, the de facto termination and, by way of the October 2004 letter, the actual termination of Plaintiff's Sales and Service Agreement on grounds not authorized by the provisions of the Sales and Service Agreement in violation of Article 14.5 of its Standard Provisions.

39. As a result of Defendant's failures set forth above, the Defendant is in breach of the Sales and Service Agreement executed by and between the Plaintiff and the Defendant. As a result

of the breach, the Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against the Defendant GM for damages together with prejudgment interest, attorney's fees, court costs and for any further relief which this Court may deem just and appropriate. The Plaintiff demands a trial by jury of right issues triable as of right by jury.

### COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing

40. Plaintiff realleges paragraphs 1 through 29 as if fully set forth herein.

41. This is an action for damages based upon breach of implied covenant of good faith and fair dealing.

42. Based upon the contractual relationship between Plaintiff and GM, GM owed to Plaintiff a duty of good faith and fair dealing in the performance and enforcement of the Sales and Service Agreement and relationship between the parties.

43. The duty of good faith and fair dealing required that GM refrain from taking action which would deprive the Plaintiff of the benefits to which it is entitled under the Sales and Service Agreement existing between the parties.

44. GM breached its implied covenant of good faith and fair dealing towards the Plaintiff by, among other things, exercising its discretion in a way which failed to ensure the distribution of new motor vehicles occurred in a fair and equitable manner; by failing to provide Plaintiff with a reasonable variety and quantity or mix of vehicles sufficient to permit Plaintiff to satisfy its obligations under its Area of Primary Responsibility; by implementing a system of allocation of motor vehicles to plaintiff which is unfair, inequitable, discriminatory and designed by operation to terminate Plaintiff's Oldsmobile franchise; by engineering the reconfiguration of its dealer network

in such manner as to eliminate all Oldsmobile dealers and products and preventing Plaintiff from any possibility of realizing a reasonable return on its investment; by intentionally rendering itself incapable of renewing Plaintiff's Oldsmobile franchise, by failing to comply with the termination provisions of the Sales and Service Agreement; by seeking to terminate the Sales and Service Agreement upon grounds not authorized under the Agreement or under Massachusetts law; and by failing to apply the TFAP Program in a fair and uniform manner. Although the TFAP Program is not expressly set forth in the Sales and Service Agreement, GM has acted, operated, and applied the TFAP Program as a substitute compensation mechanism for and in lieu of Article 15 ("Termination Assistance") of the Sales and Service Agreement.

45. GM was obligated, and failed, to exercise good faith discretion in the implementation, execution, or performance of each of the above express and standing obligations and rights under Plaintiff's Sales and Service Agreement.

46. The acts of GM were committed wilfully and recklessly and were committed with the express desire and intention to result in an unjust benefit to GM and to the detriment and damage of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant GM for damages together with prejudgment interest, attorney's fees, court costs and for any other relief which this Court may deem just and appropriate.

## COUNT IV

### Unjust Enrichment

47. Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

48. This is an action for damages based upon Unjust Enrichment.

49. The Plaintiff conferred multiple benefits upon GM by, among other things, continuing

its Oldsmobile franchise every renewal period over the last 35 years, most particularly investing significant time and effort to improve the image of all GM products, and by generating substantial goodwill in the "General Motors" name. Because of Plaintiffs efforts over the last 35 years, GM will inherit most of Plaintiff's past customers through their purchase of other GM brands. All of the above have and will continue to benefit GM and produce income for GM long after the Plaintiff's Oldsmobile franchise is eliminated. All of the foregoing benefits fall outside the scope and requirements of the Plaintiff's Sales and Service Agreement.

50. GM has specific knowledge of the benefits conferred by the Plaintiff and has voluntarily accepted and retained such benefits. GM is presently implementing institutional programs to capitalize on the goodwill created by Plaintiff. But for GM's misconduct which resulted in the inducement of the Plaintiff to continue and keep the Oldsmobile franchise and make significant investment in the franchise, the Plaintiff would not have otherwise retained and perpetuated the franchise. Because of the wrongful conduct of GM, the Plaintiff now owns an asset which has no value, as there is simply no market for the sale of a franchise product which will no longer exist. Plaintiff's facility is worth far less with Oldsmobile terminated. These circumstances are such that it is inequitable for GM to retain the benefits conferred by the Plaintiff in this regard without paying the true value thereof to the Plaintiff.

51. GM has been unjustly enriched at the expense of the Plaintiff, and the Plaintiff has suffered significant damages.

WHEREFORE, Plaintiff demands judgment against Defendant GM for damages together with prejudgment interest, attorney's fees, court costs and for any other relief which this Court may deem just and appropriate.

The Plaintiff demands a trial by jury of all issues triable as a right by jury.

## DEMAND FOR SETTLEMENT CONFERENCE

Pursuant to MGL chapter 93B, § 15(b), the Plaintiff has made a written demand for a settlement conference to Defendant General Motors Corporation. The settlement conference demand was served by notified mail prior to the filing of this action as so prescribed by Massachusetts law.

Respectfully submitted,

*[signature]*

**Robert F. MacDonald, Jr.** (Mass. Bar # 660124)
**Glenn Israel** (Mass. Bar # 565388)
**BERSTEIN, SHUR, SAWYER & NELSON, PA.**
100 Middle Street, West Tower
Portland, Maine 04104
Telephone (207) 774-1200
Facsimile (207) 774-1127

and

**Richard N. Sox, Jr.** (Fla. Bar #982156)
**W. Douglas Moody** (Fla. Bar #301779)
**MYERS & FULLER, P.A.**
2822 Remington Green Circle
Tallahassee, Florida 32308
Telephone (850) 878-6404
Facsimile  (850) 942-4869

**ATTORNEYS FOR PLAINTIFF**